UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS J CRAWLEY,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF OAKLAND,<br><br>Defendant. | Case No. 19-cv-05433-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; AND DENYING IN PART PLAINTIFF'S MOTION TO STRIKE**<br><br>Docket Nos. 12, 18 |

Plaintiff Marcus Crawley has filed suit against the City of Oakland ("City").[1] Currently pending before the Court is the City's motion to dismiss and Mr. Crawley's related motion to strike. Having considered the parties' briefs and accompanying submissions, the Court finds the motions suitable for disposition without oral argument and thus **VACATES** the hearing on the motion. The Court hereby **GRANTS** the motion to dismiss and **DENIES** in part the motion to strike.

## I.     FACTUAL & PROCEDURAL BACKGROUND

Although the complaint is not a model of clarity, Mr. Crawley has, in his opposition to the pending motion to dismiss, given further details explaining the basis of his lawsuit. Taken together, the complaint and opposition brief indicate as follows: (1) in November 2016, the City voters passed a bond measure known as Measure KK; (2) Mr. Crawley sued the City in state court challenging Measure KK but, ultimately, was not successful in that litigation, including through the appeals process; (3) his current lawsuit – in federal court – is predicated on the claim that the

---

[1] He also named the California Attorney General as a defendant but subsequently stipulated to his dismissal. *See* Docket No. 21-22 (stipulation and order).

state courts (both superior and appellate) failed to address a specific argument he made before them regarding the measure and therefore the state courts deprived him of his due process rights. *See, e.g.*, Compl. at 4 ("The [Measure] KK Cause of Action has not received a due process hearing."); Opp'n at 4 ("The Court Order SKIPPED the Decision on Petition's First Cause of Action."); Opp'n at 11 ("The state Court Order/Judgement failed to decide . . . the issue . . . .").

## II.     DISCUSSION

The City initially moved to dismiss Mr. Crawley's complaint on two grounds: (1) the *Rooker-Feldman* doctrine and (2) res judicata. After Mr. Crawley filed his opposition and clarified the basis of his complaint, the City narrowed its argument in favor of dismissal to the *Rooker-Feldman* doctrine.[2]

The *Rooker-Feldman* doctrine is based on *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). "[T]he *Rooker-Feldman* doctrine . . . , in general terms, prevents 'a party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court.'" *Henrichs v. Valley View Dev.*, 474 F.3d 609, 611 (9th Cir. 2007).

> Essentially, the doctrine bars "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced" from asking district courts to review and reject those judgments. Absent express statutory authorization, only the Supreme Court has jurisdiction to reverse or modify a state court judgment. The clearest case for dismissal based on the *Rooker-Feldman* doctrine occurs when "a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision . . . ."

---

[2] Presumably, the City no longer asserts res judicata because the current federal complaint – as clarified by Mr. Crawley – challenges the state courts' actions which took place *after* he filed suit in state court. *See L.A. Branch NAACP v. L.A. Unified Sch. Dist.*, 750 F.2d 731, 739 (9th Cir. 1984) ("The scope of litigation is framed by the complaint at the time it is filed. The rule that a judgment is conclusive as to every matter that might have been litigated 'does not apply to new rights acquired pending the action which might have been, but which were not, required to be litigated.'"); *FMC Corp. v. Up-Right, Inc.*, 816 F. Supp. 1455, 1461 (N.D. Cal. 1993) ("Res Judicata attaches only to claims available at the time of filing the original complaint."); *see also Bauerle v. City of Tucson*, 234 F. App'x 607, 608 (9th Cir. 2007) ("Identity of claims is not satisfied for Bauerle's claims regarding three issues . . . . Claims regarding each of these issues arise out of separate transactional nuclei of facts that did not exist at the time Bauerle filed her amended complaint in the prior suit. Application of res judicata to these claims was therefore error.").

2

*Id.* at 613.

Because it was invoking the *Rooker-Feldman* doctrine, the City asked the Court to take judicial notice of the state court rulings that had been issued, both superior and appellate. When Mr. Crawley filed his opposition to the City's motion, he did not object to the request for judicial notice or otherwise contest the admissibility of the state court decisions. However, after the City filed its reply, in which it narrowed its focus to the *Rooker-Feldman* doctrine, Mr. Crawley filed the pending motion to strike, in which he argues, *inter alia*, that the Court cannot consider the (unpublished) California Court of Appeal's decision on his state court petition.

This motion to strike is denied. Contrary to what Mr. Crawley argues, the state court decision is not irrelevant. Mr. Crawley is challenging the state courts' actions, claiming a failure to rule on an issue that he raised with the courts. Therefore, the Court must necessarily understand what the state court rulings were. In addition, the City has raised a *Rooker-Feldman* defense. Thus, again, the Court must necessarily understand what the state court rulings were. *Cf.* Fed. R. Civ. P. 26(b) (providing that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense").

Mr. Crawley also contends that the state court decision is hearsay. But hearsay is defined as an out-of-court statement that "a party offers in evidence *to prove the truth of the matter asserted in the statement*." Fed. R. Evid. 801(c)(2) (emphasis added). Here, the City is not asking the Court to accept the truth of the matters asserted in the state court decision (*e.g.*, the correctness of the state court's analysis). Rather, the City is simply asking the Court to consider what the state court held, regardless of whether that holding was correct. *Cf. Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of briefs and a hearing transcript filed in another lawsuit "[t]o determine what issues were actually litigated" in that lawsuit). *Compare Bertuglia v. City of N.Y.*, 133 F. Supp. 3d 608, 631 n.14 (S.D.N.Y. 2015) (stating that, "[b]ecause Judge Zweibel's opinions are hearsay and no hearsay exception applies, the opinions are inadmissible on this motion for the truth of whether there was sufficient probable cause for the first or second indictments" and "whether there was prosecutorial misconduct"; but "the decisions are admissible . . . for the fact that the prosecution terminated in favor of the

3

plaintiffs"). The Court therefore may consider the state appellate court order (as well as the state superior court order). The record before the Court thus reflects as follows.

Mr. Crawley initiated his state court action – a petition for a writ of mandamus – in February 2017. *See* Cal. AG RJN, Ex. 1 (petition). In his petition, he asserted several causes of action against, *inter alia*, the City. (The California Attorney General was named as a real party in interest.)

In the first cause of action, Mr. Crawley claimed that Measure KK violated the California Constitution because:

- the California Constitution "guarantees property owners the right to vote on all property taxes," Cal. AG RJN, Ex. 1 (Pet. ¶ 21); *see also* Cal. Const. art. 13C, § 2(c) (providing that "[n]o local government may impose, extend, or increase any special tax unless and until that tax is submitted to the electorate and approved by a two-thirds vote");
- Measure KK "only stated the $600 million cost of the . . . Bond" and did not "mention . . . the related property tax" that would be used to repay the bond in the "'Ballot Label'" or "'Ballot Title'"; and
- Measure KK also did not state "the tax amount . . . in the 'Title and Summary' or in 'The Full Ballot Measure.'" Cal. AG RJN, Ex. 1 (Pet. ¶¶ 20, 24).

According to Mr. Crawley, "the one actual statement of the tax cost" – approximately $1.2 million – was "buried . . . on page 4 [of the voter pamphlet] in a field of other numbers in the 'Tax Rate Statement,' where the voters were least likely to read it." Cal. AG RJN, Ex. A (Pet. ¶ 23).

In the third cause of action, Mr. Crawley asserted that California Election Code § 9404 is unconstitutional. Section 9404 is a part of Chapter 5 of the Election Code, titled "Bond Issues." Section 9400 provides that the "chapter applies to all bond issues proposed by a county, city, district, or other political subdivision, . . . the security for which constitutes a lien on the property for ad valorem taxes within the jurisdiction and the proposal for which is required to be submitted to the voters for approval." Cal. Elec. Code § 9400. Section 9401 provides that, "[i]n connection with each bond issued specified in Section 9400, a statement shall be mailed to the voters with the

4

sample ballot for the bond election." *Id.* § 9401(a). Certain information is required to be included in the statement – *e.g.*, "[t]he best estimate . . . of the average annual tax rate that would be required to be levied to fund that bond issue" and "[t]he best estimate . . . of the total debt service, including the principal and interest, that would be required to be repaid if all the bonds are issued and sold." *Id.* Finally, § 9404 – the statute contested by Mr. Crawley – provides that "[t]he Legislature declares that the essence of compliance with this chapter [on bond issues] is good faith in presenting to voters the most accurate available information for their use in effecting comparisons and exercising judgment in casting their ballots." Cal. Elec. Code § 9404. According to Mr. Crawley, § 9404 is unconstitutional because, "[e]ven though Oakland apparently complied with Election Code § 9401, the voters were deprived of their constitutional right to vote on the tax" and so "[t]he conclusion must be that Election Code § 9401 conflicts with Article 13C § 2(d) [of the California Constitution] and is therefore unconstitutional." Cal. AG RJN, Ex. 1 (Pet. ¶ 34).

In response to Mr. Crawley's petition, the City and the California Attorney General filed demurrers. In May 2017, the state superior court sustained the demurrers as to both the first and third causes of action. The superior court noted first that Measure KK had been "presented to voters and passed by the voters in November 2016. As a result, the court will disturb the results of the election only if the ballot materials are 'so misleading and inaccurate that constitutional due process requires invalidation of the election.'" Cal. AG RJN, Ex. 2 (Order at 1).

Moving on to the first cause of action asserted in the petition, the superior court stated:

> The City disclosed that Measure KK was a tax. The ballot materials state "The City would impose a tax based on the value of the real property and improvements within the City to pay the principal and interest on the bonds." Measure KK was submitted to the voters and the measure passed by two-thirds vote. The petition does not identify any misstatements or omissions that are "so misleading and inaccurate that constitutional due process requires invalidation of the election."

Cal. AG RJN, Ex. 2 (Order at 2).

As for the third cause of action, the superior court found

> no conflict between California Constitution, Article 13C, section

5

> 2(d) and Elections Code 9401-9404. The former is a requirement that there be a vote and the latter concerns requirements for disclosures related to a vote. Assuming that they concerned the same subject matter, there is no facial conflict – the Election Code states requirements that the legislature decided were reasonable for permitting an informed vote. . . . There is no unconstitutionality in Elections Code 9401-9404 that "clearly, positively, and unmistakably appears."

Cal. AG RJN, Ex. 2 (Order at 4).

Subsequently, Mr. Crawley appealed the superior court's decision. The state appellate court affirmed. On the first cause of action, the appellate court acknowledged that "[t]he summary description of Measure KK printed on the ballot card and repeated at the beginning of the information about the measure in the voter pamphlet" did not mention that Measure KK would impose a tax. *Crawley v. City of Oakland*, No. A154348, 2019 WL 1760765, at *3 (Cal. Ct. App. April 22, 2019).

> But that does not answer whether the ballot materials complied with Article XIII C. They did.
>
> Article XIII C, section 2, subdivision (d) requires that special taxes must be submitted to the electorate for approval by a two-thirds vote. The taxes to be imposed as a result of Measure KK were plainly disclosed in the bond measure summary, the city attorney's analysis, the city auditor's analysis, and the tax rate statement in the voter information pamphlet. Indeed, as the City observes, "[l]iterally every page of the ballot materials... contain[s] references to Measure KK's tax, tax rate, or property tax, and the proposed Measure was included in the ballot materials." The conclusion is inescapable that taxes associated with Measure KK were appropriately submitted to the electorate.
>
> Crawley cites (and we have found) no authority that supports his claim the City was constitutionally required to explicitly state that Measure KK would impose a tax and disclose the total debt service in the ballot summary and ballot label. Nor does he or could he plausibly claim the information provided to the voters in the analyses by the city attorney, the city auditor and the city administrator was incomplete or misleading.
>
> The petition alleged the City "buried" the amount of the total debt service in the auditor's tax rate statement, but that allegation failed to raise a plausible due process claim. "Determination of how much process is due in a local, direct decisionmaking context – where the complained-of irregularities consist of omissions, inaccuracies or misleading statements in the ballot materials – will depend on whether the materials, in light of other circumstances of the election, were so inaccurate or misleading as to prevent the voters from making informed choices." In this case, the $ 1.2 billion estimate for the maximum potential debt service was disclosed in the Tax

6

> Rate Statement. Voters reading the ballot materials would readily locate that figure.

*Id.*

On the third cause of action, the appellate court rejected Mr. Crawley's contention that Election Code § 9404 conflicts with Article 13C of the California Constitution

> "because it claims to provide the 'most accurate (tax) information' to the voters even when an agency fails to include *any* tax information on the ballot card." . . . As we explained in addressing the first cause of action, nothing in article XIII C requires that the tax rate or total debt service must be stated on the ballot label. As the trial court correctly found, the constitutional provision "is a requirement that there be a vote and [sections 9401 through 9404] concern[ ] requirements for disclosures related to a vote. Assuming that they concerned the same subject matter, there is no facial conflict – the Election Code states requirements that the legislature decided were reasonable for permitting an informed vote."

*Id.* at *4 (emphasis in original).

Following the appellate court's decision, Mr. Crawley petitioned the California Supreme Court for relief, but his petition for review was denied in July 2019. *See* Cal. AG RJN, Ex. 4 (order).

### III.  DISCUSSION

As noted above, Mr. Crawley's complaint herein is that the state courts failed to rule on the specific issue that he raised to them during the state court proceedings and thus they violated his right to due process. As to what was specific issue the state courts failed to rule on, Mr. Crawley identifies the issue in his papers as the following: the failure of the City to disclose in the ballot or bond measure summary the *amount* of the tax (*i.e.*, as opposed to the fact that there would be a tax). *See, e.g.*, Opp'n at 5 (stating that the "legal issue has always been 'The City must reveal the amount of the special tax (i.e. 'that tax') to the voters on the Ballot Card Statement'"); Opp'n at 7 (stating that the "legal issue is that the amount of 'That Tax' must be stated on the Measure's Ballot Card/Summary Statement"); Opp'n at 12 (stating that the City "might quibble that the Petition's First Cause of Action only mentioned the Measure KK 'Title & Summary' rather than the 'Ballot Card Statement'" but asserting that the two are the same "word for word"; "[t]he issue of the First Cause of Action was the statement that the voters vote on, not the title, label or designation of the statement").

7

The problem for Mr. Crawley is that, even if the state superior court did not address this specific issue, the state appellate court did. In fact, the appellate court explicitly rejected the argument. *See, e.g.*, *Crawley*, 2019 WL 1760765, at *3 ("Crawley cites (and we have found) no authority that supports his claim the City was constitutionally required to explicitly state that Measure KK would impose a tax and disclose the total debt service in the ballot summary and ballot label.").

In light of that fact, the relief Mr. Crawley seeks is to reverse the California Court of Appeal's express ruling on a specific issue, and thus *Rooker-Feldman* clearly applies. In *Worldwide Church of God v. McNair*, 805 F.2d 888 (9th Cir. 1986), the plaintiffs had sued in federal court on the basis that a state court judgment finding them liable for defaming a person was unconstitutional because the alleged defamatory statements constituted religious speech protected by the First Amendment. *See id.* at 889. The Ninth Circuit held that *Rooker-Feldman* barred the federal suit because the state court had "considered and rejected the plaintiff's argument that the allegedly defamatory statements were protected." *Id.* at 892 (adding that "[i]t would be impossible for the federal court to review in the abstract the plaintiff's constitutional challenge to the defamation verdict"). The same principle applies here.

The Court therefore grants the City's motion to dismiss based on *Rooker-Feldman*. As to the remaining issues raised in Mr. Crawley's motion to strike, they have no impact on the Court's analysis above and are therefore moot.[3] Finally, for purposes of clarity, the Court grants Mr. Crawley's request to file a sur-reply, *see* Docket No. 20 (motion), but the arguments he makes therein do not alter the Court's analysis above.

///

///

///

///

---

[3] In the motion, Mr. Crawley also asked that the Court strike (1) a reference that the City made in one of its briefs to vexatious litigation and (2) a claim by the City that the only way to invalidate a ballot measure post-election is if the ballot materials are misleading and inaccurate.

8

### IV. <u>CONCLUSION</u>

For the foregoing reasons, the City's motion to dismiss is granted. The dismissal is with prejudice because *Rooker-Feldman* bars Mr. Crawley's lawsuit. Given Mr. Crawley's opposition brief, it is evident that there is no amendment he can make to avoid the bar.

The Clerk of the Court is instructed to enter a final judgment in accordance with this order and close the file in this case.

This order disposes of Docket Nos. 12 and 18.

**IT IS SO ORDERED**.

Dated: November 18, 2019

_____
EDWARD M. CHEN
United States District Judge